USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/23/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JOEY LOPEZ,

                  Petitioner,

   -against-

SUPERINTENDENT OF FIVE POINTS
CORRECTIONAL FACILITY,

                  Respondent.
----------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**

14-CV-4615 (RJS) (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable Richard J. Sullivan, United States District Judge:**

Pro se Petitioner Joey Lopez seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254,

challenging his November 24, 2009 judgment of conviction in New York Supreme Court, New

York County. A jury convicted Lopez of two counts each of burglary in the first degree and

robbery in the second degree and one count each of attempted assault in the first degree, assault

in the second degree, and attempted assault in the second degree. The trial court found Lopez to

be a predicate felony offender and sentenced him to an aggregate prison term of 15 years

followed by five years of supervised release. In his petition, Lopez contends that his second-

degree robbery and first-degree burglary convictions were against the weight of the evidence and

that there was insufficient evidence to support them.

Lopez also seeks discovery pursuant to Rule 6(a) of the Federal Rules Governing Section

2254 Proceedings. (Dkt. No. 20). Specifically, Lopez requests that Respondent produce a tape

recording of a certain 911 call and a complete transcript of the victim's grand jury testimony.

For the reasons set forth below, I recommend that both Lopez's motion for discovery and

his habeas corpus petition be denied.

USDC SDNY
DATE SCANNED 3/23/15

# I.   BACKGROUND

The following facts are drawn from the record of proceedings before the state trial court. In view of Lopez's conviction, the evidence presented at trial is summarized in the light most favorable to the verdict. See Garbutt v. Conway, 668 F.3d 79, 80 (2d Cir. 2012) (citation omitted). On October 18, 2008, Lopez assaulted Ery Martinez on 204th Street and Post Avenue in Manhattan, took his cell phone, and pursued him into an apartment building to continue beating him with a gun. (Trial Transcript ("Tr.") 34, 48-51, 60-62 (Dkt. No. 10)).[1] The beating was meted out as punishment after Martinez had lost marijuana worth approximately $100, which he was supposed to sell for Lopez. (Tr. 37, 48, 194). As a result of the beating, Martinez sustained multiple facial fractures, cerebral soft tissue swelling, and a broken nose, injuries consistent with blunt force trauma, and for which he was hospitalized for two and a half days. (Tr. 74, 226-30).

On November 17, 2008, a grand jury returned an indictment charging Lopez with two counts each of robbery in the first degree, robbery in the second degree, and burglary in the first degree. Lopez was also charged with attempted assault in the first degree, assault in the second degree, and attempted assault in the second degree. Lopez's co-defendant, Jose Collado, was jointly charged with robbery in the second degree and burglary in the first degree and separately charged with criminal possession of a weapon in the third degree.

On October 21, 2009, Lopez and Collado proceeded to a jury trial before the Honorable Lewis Bart Stone of New York State Supreme Court, New York County. During the trial,

---

[1] The transcript of the proceedings in Lopez's criminal case, running from jury selection through sentencing, is docketed on ECF as Document number 10. The transcript is divided into four separately paginated subparts representing each proceeding. All citations to the trial proceedings are designated as "Tr."

2

Justice Stone dismissed the first-degree robbery counts against Lopez and the third-degree weapons possession count against Collado.  The jury subsequently convicted Lopez of all charges and acquitted Collado of all charges.  Lopez is currently serving his sentence at Five Points Correctional Facility in Romulus, New York.

## A.  Lopez's Trial

### 1.  The Prosecution's Case

The prosecution's case consisted of the testimony of the victim, Martinez (Tr. 30-78); Christopher Hidalgo, a witness to the incident with ties to both Lopez and Martinez (Tr. 173-219, 265-92); Jessica Yaroshynski, a custodian of records manager at the New York City Department of Corrections ("NYC DOC"), who maintained the NYC DOC recording of an incriminating telephone call between Lopez and Hidalgo (Tr. 105-24); Dr. Gautam Mirchandani, the neuroradiologist who analyzed the radiology films of Martinez's injuries taken while he was being treated at Columbia Presbyterian Medical Center (Tr. 219-30); and Detective Thomas Taughran, the officer who arrested Lopez and Collado (Tr. 232-37).  In addition, the prosecution offered into evidence, inter alia, the NYC DOC audiotape recording of the conversation between Lopez and Hidalgo and the radiology films depicting Martinez's injuries.  See People's Exs. 1, 8; (Tr. 121-22, 223-24).

The testimony of the witnesses recounted the following story:

### a.  Martinez's Testimony

In October 2008, 19-year-old Ery Martinez was living with his girlfriend, Felicia Philbert, in a rented room in Hidalgo's apartment at 83 Post Avenue.  (Tr. 52-54, 135-36, 164). Martinez, who never finished high school, had immigrated to the United States from the Dominican Republic in 2007 on a travel visa.  (Tr. 32, 84).  Martinez's visa had expired at the

3

end of 2008, so that by the time of trial, he was no longer a legal resident. (Tr. 84-85, 238-39). Martinez testified that the prosecutor had told him he would help him avoid deportation (Tr. 240). Martinez was also receiving monetary assistance from the District Attorney's office to help pay for his living expenses because he had been homeless for a period of time following the incident giving rise to the charges against Lopez. (Tr. 32-33, 138, 256-57).

On the morning of October 18, 2008, Martinez began his shift as a marijuana dealer covering the one-block territory of 204th Street and Post Avenue. (Tr. 33-36). Upon exiting 83 Post Avenue, Martinez received $100 worth of marijuana from Kevin ("Kev"), who served as his immediate supervisor and "lookout." (Tr. 37-38, 87-88). Both Martinez and Kev reported to Lopez. (Tr. 34-37, 47, 88). As was his custom, Martinez placed the marijuana he received from Kev inside the wheel well of a parked car. (Tr. 38, 90). Kev then left to buy a pair of sneakers, leaving Martinez alone to look out for police, potential thieves, and customers. (Tr. 38, 90-91). At one point, Martinez walked down the block to talk to a cousin who lived in a nearby building. (Tr. 38, 91). Martinez suddenly noticed that the car in which he had hidden the drugs was no longer there. (Id.). He ran around the block looking for either the car or the marijuana without success. (Tr. 39, 91).

Once Kev returned and learned what had happened, he called Lopez. (Tr. 39, 91-94, 248-49). Lopez summoned Kev to meet him while Martinez remained at his post. (Tr. 39. 92-96, 249-50). After a few minutes, Lopez arrived, accompanied by a group of men that included Kev and Collado. (Tr. 40, 97). Martinez stood with his back to the wall of 83 Post Avenue while Lopez and his associates surrounded him. (Tr. 47-48, 97, 142-43). Lopez threatened that he would make Martinez "look worse than the other person [who . . .] beat [him] up before," referring to a beating that Martinez had received from another drug dealer approximately a week

4

earlier after he had accused Martinez of stealing drugs. (Tr. 42-45, 129-31, 259). Martinez

began to explain that Kev, who was supposed to "back" him, had left, and Martinez "could not

take care of everything and watch what was going on" because he was there alone. (Tr. 41, 46-

48, 261).

While Martinez attempted to account for the loss of the drugs, Lopez suddenly punched

Martinez below his left eye, and he fell back against the wall. (Tr. 48-49). Lopez, who was

taller and heavier than Martinez, repeatedly punched Martinez in the face and head, causing

Martinez to become dizzy. (Tr. 48-50, 82). Martinez did not fight back because the other men,

including Collado, threatened that if he did, they would beat him up as well. (Tr. 49-50, 80). At

one point during the beating, Lopez took the cell phone Martinez had in his pocket. (Tr. 50-51,

143). Martinez testified that he had recently purchased the cell phone at a Radio Shack on 207th

Street for $43. (Tr. 51, 94).

When Lopez eventually stopped hitting Martinez, he told Collado to go and retrieve a

gun. (Tr. 54). Martinez managed to extract his keys from his pocket, opened the front door to

83 Post Avenue, and entered the vestibule as the door closed behind him. (Tr. 51, 54-55, 143-

45). Martinez could hear Lopez outside the building threatening to kill him and his girlfriend

and to "take all the money that was upstairs in the apartment" once he got the gun. (Tr. 163).

Philbert came downstairs to be with Martinez after he entered the vestibule. (Tr. 56-57).

Martinez gave her his keys and told her to leave because Lopez had threatened to kill them both.

(Id.). Philbert went back upstairs and Martinez slumped down in the vestibule between the inner

and outer doors to the building, crying from pain and fear. (Tr. 56-58, 163). He was bleeding,

his eye and ear were swollen, his face and lips were cut, and he had a broken and bleeding molar.

(Tr. 82-83, 60-61, 163).

From where he sat, Martinez could see through the partially transparent outer door of the building, and he observed Collado hand Lopez a .45 caliber gun. (Tr. 59, 62, 147-48). Lopez ordered Hidalgo, who was "hanging out with [Lopez] at that moment," to open the door to the building. (Tr. 59-60, 271-73). According to Martinez, Lopez pointed a gun to Hidalgo's head and threatened to shoot him unless he opened the door. (Tr. 59-60, 160-64). Hidalgo complied. (Id.). Lopez and his entourage entered the vestibule where Martinez was sitting. (Tr. 60, 164). Martinez was too frightened to move. (Tr. 165, 355 [stipulation]). Lopez struck Martinez repeatedly with the gun. (Tr. 60-62, 168). Then Lopez, while pointing a gun at Martinez's head and threatening to kill him, demanded that Hidalgo open the second door leading into the interior hallway. (Tr. 62, 166). Once inside, Lopez and the other men began to march Martinez up the stairs toward Hidalgo's fourth floor apartment. (Tr. 63, 166). Martinez begged Lopez to stop as he repeatedly struck Martinez with the gun. (Tr. 64, 170). At the second floor, a woman opened her door, saw the group of men, and quickly shut it again. (Tr. 64-66). Lopez continued to beat Martinez until Hidalgo intervened and asked Lopez to stop because Martinez was severely hurt. (Tr. 66). Lopez obliged, telling Martinez, "You see, you saved yourself." (Tr. 67). As he descended the stairs, Lopez again threatened Martinez that he would kill him. (Id.).

After Lopez and his crew left, Hidalgo took Martinez upstairs to clean off all the blood. (Tr. 67-68). When Martinez said that he would call the police, Hidalgo told him that if he did, he would have to move out of Hidalgo's apartment immediately. (Tr. 67). Despite Hidalgo's warning, Philbert called the police. (Tr. 69, 139). After the police arrived, Martinez explained what had happened, identified the perpetrators by name, and pointed out the window to a group of men on the street who were part of Lopez's crew, though neither he nor Collado were in sight. (Tr. 69-70, 139-41).

6

Martinez was then taken to the hospital in an ambulance. (Tr. 71). At the hospital, the neuroradiologist, Dr. Mirchandani, reviewed Martinez's radiology results and determined that Martinez's injuries were consistent with blunt force trauma. (Tr. 228). His left sinus had multiple fractures and was filled with blood, his nose was broken, and he had lacerations and severe swelling near his eyeball. (Tr. 224-30). Martinez received stitches on his face, forehead, and ear, and was released from the hospital after two-and-a-half days. (Tr. 74). Thereafter, he went to live with his aunt in the Bronx. (Tr. 33). Subsequently, Martinez was homeless for a period of time until he received monetary assistance from the District Attorney's office to rent an apartment. (Tr. 32-33, 138, 257). At the time of trial, Martinez still suffered from his injuries: his molar bled, he was missing a tooth, and he grew upset whenever he thought about the incident. (Tr. 77, 165).

### b. Hidalgo's Testimony

Hidalgo also testified for the prosecution, though his testimony diverged from Martinez's in certain key respects that favored the defense.[2] Hidalgo had known Lopez for about 15 years since they met as children living on the same block, and the two men were close. (Tr. 185-86). They considered themselves brothers-in-law because Hidalgo was having a child with the sister of the mother of Lopez's child. (Tr. 185-86, 267). At first, Hidalgo claimed that he did not know what Lopez did for a living, but eventually admitted that he believed Lopez sold drugs. (Tr. 186, 285-86).

On the morning of October 18, 2008, Lopez's birthday, Hidalgo had gone to Lopez's apartment to get ready for his birthday party. (Tr. 189-90). Hidalgo was present when Lopez

---

[2] Hidalgo initially invoked the Fifth Amendment in response to questions from the prosecutor, but testified once he was granted immunity from future proceedings arising out of his testimony in this case. (Tr. 173-74, 178-80).

received a phone call that visibly upset him, and accompanied Lopez to the street where a man, whom Hidalgo said he did not know, approached Lopez to speak with him. (Tr. 191-95). Hidalgo then walked away toward his own building, because he tried to stay away from "stuff . . . about the block, anything that has to do with fighting or anything." (Tr. 195). Hidalgo testified that he witnessed the assault, but claimed that both Lopez and Martinez exchanged blows, and Martinez hurt Lopez's left arm, which was in a cast. (Tr. 198-200, 268-69).

Hidalgo adamantly denied seeing Lopez with a gun that day, though he conceded that he opened the door to his building because he was afraid that Lopez would hit him. (Tr. 215-16, 271-72, 290). Hidalgo also denied that Lopez took Martinez's cell phone because he knew "as a fact" that Martinez had no cell phone. (Tr. 276-78). Hidalgo explained that he knew this because he had asked Martinez for his phone number in order to purchase marijuana from him and Martinez never provided one. (Tr. 277-79). Later in his testimony, however, Hidalgo admitted that he did not actually know whether or not Martinez had a cell phone and "maybe there was a phone." (Tr. 279).

### c. Other Evidence

Detective Taughran testified that he arrested Lopez on November 10, 2008. (Tr. 233-37). On January 20, 2009, corrections authorities recorded a telephone conversation between Lopez and Hidalgo pursuant to NYC DOC standard procedures. (Tr. 118-19, 213-14). The recording of the conversation was admitted into evidence and played before the jury. (Tr. 121-22, 124). During the call, Hidalgo agreed to talk with Lopez's lawyer because he wanted to help Lopez. (Tr. 214-15, 286). Lopez told Hidalgo "to make sure" to say that Martinez "never owned a

8

phone." See People's Ex. 1; Brief for Respondent ("Resp. Brief") at 13.[3]  Lopez pointed out that

if they could demonstrate that Martinez never had a phone, the prosecution would have "to

knock" the robbery charges. Id.

Lopez further instructed Hidalgo to say that Martinez had swung at Lopez first, and that

Lopez "had a cast on for a broken hand." People's Ex. 1; Resp. Brief at 13-14.  Additionally,

Lopez advised Hidalgo that "if worse c[a]me to worse" Hidalgo should say that the "toy" had

belonged to Collado and that Lopez "never hit [Martinez] with the shit." (Tr. 265, 275).  When

asked at trial about the meanings of "toy" and "shit," Hidalgo, though initially equivocal, later

acknowledged that both terms referred to a gun. (Tr. 266, 279, 282-83).  Hidalgo further

admitted at trial that "[i]f it came down to it," he was willing to lie for Lopez. (Tr. 275).

## 2.  The Defense Case and Motion for Dismissal

Lopez presented no evidence at trial. (Tr. 323).  At the end of the prosecution's case,

Lopez moved for dismissal on all counts "on the grounds that the People have failed to establish

a prima facie case." (Tr. 349).  Lopez did not specify the deficiencies in the prosecution's case,

relying solely on the record. (Id.).  The court denied the motion as to all counts. (Id.).

## 3.  Verdict and Sentencing

On October 27, 2009, the jury convicted Lopez on all counts while acquitting Collado on

all counts. (Tr. 485-86).  On November 24, 2009, Justice Stone sentenced Lopez in absentia as a

predicate felon based on his 2002 conviction for criminal possession of a weapon in the third

---

[3] Lopez's and the District Attorney's briefs to the Appellate Division comprise part of the State
Court Record, which was filed with Respondent's Opposition to the Petition. The State Court
Record additionally contains:  the order of the Appellate Division affirming Lopez's convictions;
Lopez's application seeking leave to appeal to the Court of Appeals; the District Attorney's
opposition to his application; and the Court of Appeals' certificate denying leave. (Dkt. No. 11).

9

degree. (Sentencing Transcript ("S.") 6-7).[4]  The court accepted the prosecutor's sentencing

recommendations, which amounted to an aggregate prison term of 15 years.  (S. 7-8, 10-11).[5]

The court observed that trial testimony had demonstrated the incident was an act "of a drug

dealing king pin[]. . . keeping his minions in line by terror."  (Id.).  The court initially sentenced

Lopez to three years of post-release supervision; however, because the mandatory minimum for

first-degree attempted assault and second-degree assault was five years of post-release

supervision, the court resentenced Lopez to the five-year mandatory minimum term on

September 16, 2010.  (Resentencing Transcript 3, 7-8).

## B.  Post-Conviction Proceedings

### 1.  Lopez's Direct Appeal

Lopez, represented by counsel, filed a direct appeal of his conviction to the New York

State Supreme Court, Appellate Division, First Department in December 2012.  Brief for

Defendant-Appellant ("Appellant's Brief").  Lopez raised two grounds for appeal:

> Appellant's second-degree robbery and first-degree burglary convictions must be
> set aside as against the weight of the evidence where the people did not establish
> that:  a) a cell phone had been taken from the complainant; or b) assuming that a
> cell phone had been taken, that it had been taken with larcenous intent and not
> simply as an afterthought; and c) appellant's entry into [83 Post Avenue] was
> unlawful. U.S. Const., amend. XIV; N.Y. Const., art. I, § 6; C.P.L. § 470.15(5).

> Appellant's 15 year prison term is unduly harsh and excessive and should be
> reduced in the interest of justice.

---

[4] Lopez did not appear in court on the day of his sentencing and he was also absent for all but the
first day of trial, despite the judge's issuance of a warrant for his arrest.  (Tr. 413; S. 2-3).

[5] Specifically, the court sentenced Lopez to:  (1) four determinate prison terms of 15 years to be
followed by five years of post-release supervision on the burglary and robbery counts; (2) two
determinate prison terms of five years followed by five years of post-release supervision on the
attempted first- and second-degree assault counts; and (3) an indeterminate prison term of two to
four years on the second-degree assault count, with all sentences to run concurrently.

Appellant's Brief at 26, 39. On May 16, 2013, the Appellate Division unanimously affirmed Lopez's conviction. People v. Lopez, 106 A.D.3d 533 (1st Dep't 2013). The court rejected Lopez's argument that his robbery and burglary convictions were against the weight of the evidence. It concluded that there was "no basis for disturbing the jury's credibility determinations," finding that "[t]he evidence established that [Lopez] stole the victim's cell phone, that he did so by force rather than as an afterthought following an assault, and that he unlawfully entered the victim's apartment building by threatening an occupant." Lopez, 106 A.D.3d at 534. With respect to Lopez's second claim, the court perceived "no basis for reducing [Lopez's] sentence." Lopez, 106 A.D.3d at 534.

Lopez then sought leave for further review in the New York Court of Appeals of "all issues raised" in his brief to the Appellate Division, but on January 6, 2014, the Court of Appeals denied Lopez's application. People v. Lopez, 22 N.Y.3d 1089 (2014).

### 2. The Instant Petition

On June 5, 2014, Lopez, proceeding pro se, filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, arguing that his convictions for first-degree burglary and second-degree robbery were both against the weight of the evidence and unsupported by legally sufficient evidence. Petition for Writ of Habeas Corpus ("Pet.") (Dkt. No. 1). The petition was subsequently referred to the undersigned for a report and recommendation. Order of Reference (Dkt. No. 6). Respondent, the Superintendent of Five Points Correctional Facility, where Lopez is currently incarcerated, opposed the petition in papers filed on September 24, 2014. Answer; Resp. Mem. of Law in Opp'n to Pet. ("Resp. Mem.") (Dkt. No. 9). Lopez filed a Traverse on January 13, 2015. Traverse (Dkt. No. 21).

11

Lopez asserts two claims in his petition.  First, just as he argued on direct appeal, Lopez contends that his robbery and burglary convictions were against the weight of the evidence.  Pet. at 5-14.  As to the robbery counts, Lopez argues that the prosecution failed to prove the existence of the cell phone that he allegedly stole from Martinez.  Pet. at 7.  As to the burglary counts, Lopez argues that the prosecution failed to establish that he entered 83 Post Avenue with the intent to commit a crime, or alternatively, even if it did, the prosecution failed to prove that he entered the building unlawfully.  Pet. at 11-13.  Second, Lopez challenges his robbery and burglary convictions on the grounds that there was legally insufficient evidence to sustain them, relying on the same factual arguments in support of his claim that these convictions were against the weight of the evidence.  Pet. at 5-14.

## II.    DISCUSSION

### A.  Lopez's Request for Discovery

On January 13, 2015, the Court received a motion from Lopez seeking discovery pursuant to Rule 6(a) of the Federal Rules Governing Section 2254 Proceedings.  Petitioner's Discovery Motion ("Pet.'r's Mot.") (Dkt. No. 20).  Lopez requests that Respondent produce: (1) a tape of a 911 call made by Martinez's girlfriend, Felicia Philbert, after the crime took place; and (2) a complete transcript of Martinez's grand jury testimony.[6]  Respondent opposed Lopez's motion by letter filed on January 20, 2015.  (Dkt. No. 24).

### 1.  Legal Standard for Discovery in Habeas Cases

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course."  Bracy v. Gramley, 520 U.S. 899, 904 (1997).  Rather,

---

[6] In his motion, Lopez state that he seeks the "missing grand jury transcripts as testified to by the victim," Pet.'r's Mot. at 3, but in his conclusion says that he requests "the full and complete grand jury transcripts."  Id. at 14.

Rule 6(a) of the Rules Governing Section 2254 Proceedings provides that a "judge may, for good cause, authorize a party to conduct discovery . . ." 28 U.S.C. § 2254, Rule 6(a). Good cause requires more than "[g]eneralized statements regarding the possible existence of discoverable material." Pizzuti v. United States, 809 F. Supp. 2d 164, 176 (S.D.N.Y. 2011) (citations omitted); see also Gonzalez v. United States, No. 12-CV-5226 (JSR) (JLC), 2013 WL 2350434, at *3 (S.D.N.Y. May 23, 2013), reconsideration denied in part, 2013 WL 4453361 (S.D.N.Y. July 9, 2013); Edwards v. Superintendent, Southport C.F., 991 F. Supp. 2d 348, 364 (E.D.N.Y. 2013) (citations omitted). Moreover, "Rule 6 does not license a petitioner to engage in a 'fishing expedition' by seeking documents 'merely to determine whether the requested items contain any grounds that might support his petition, and not because the documents actually advance his claims of error.'" Gonzalez, 2013 WL 2350434, at *3 (quoting Pizzuti, 809 F. Supp. 2d at 176); see also, e.g., Ruine v. Walsh, No. 00-CV-3798 (RWS), 2005 WL 1668855, at *6 (S.D.N.Y. July 14, 2005) (quoting Charles v. Artuz, 21 F. Supp. 2d 168, 169 (E.D.N.Y. 1998). "A petitioner can meet his burden of showing 'good cause' for discovery only when 'specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'" Gonzalez, 2013 WL 2350434, at *3 (quoting Bracy, 520 U.S. at 908-09); see also, e.g., Drake v. Portuondo, 321 F.3d 338, 346 (2d Cir. 2003); Edwards, 991 F. Supp. at 364 (citation omitted).

### 2. Lopez Cannot Demonstrate Good Cause for His Discovery Requests

#### a. The Recording of the 911 Call

Lopez requests that Respondent produce the recording of the 911 phone call Philbert made to the police after Lopez left 83 Post Avenue and Martinez and Hidalgo returned to Hidalgo's apartment. On May 29, 2014, Lopez made a Freedom of Information Law ("FOIL")

request for the recording from the New York City Police Department, and his request was denied as was his subsequent appeal of the denial. See Pet.'r's Mot., Ex. A (Letter dated June 10, 2014, denying FOIL request) and Ex. B (Letter dated July 11, 2014, denying appeal of FOIL request denial). Lopez's FOIL request was denied on the grounds that disclosure of the information may endanger someone's safety or "constitute an unwarranted invasion of privacy." See id. In his discovery request, Lopez contends that the call would reveal that Philbert, who allegedly witnessed the entire incident, did not mention that a robbery occurred, which would bolster his claim that there was insufficient evidence to sustain the second-degree robbery convictions. Pet.'r's Mot. ¶¶ 8-9.

The Court concludes, however, that Lopez has not shown good cause for compelling the production of the 911 recording because his request is based entirely on speculation and relates to evidence that was neither admitted at trial nor crucial to impeach Martinez's testimony regarding the robbery. As Respondent observes, Lopez has not stated how he would have personal knowledge of the call, and specifically whether Philbert ever uttered the word "robbery." Respondent's Letter Opposing Petitioner's Discovery Motion ("Resp't's Opp'n") at 2. Moreover, Philbert did not testify at trial, and there was no 911 call admitted into evidence. Id. At trial, Martinez testified that Philbert said she would call the police and that she had "watched everything from upstairs," (Tr. 55, 69), but defense counsel's objection to this testimony was sustained. Further, even if Philbert had been an eyewitness to the assault occurring outside 83 Post Avenue, she might not have seen the robbery, because Lopez "simply reached into [Martinez's] pocket and removed a cell phone," which was a minor event during the course of the assault on Martinez. Resp't's Opp'n at 2. Therefore, the production of the tape, assuming it still exists, could not lead to habeas relief.

14

### b. The Transcript of Grand Jury Testimony

Lopez also seeks a complete transcript of Martinez's grand jury minutes. He currently

has six pages of the transcript comprising an excerpt of Martinez's testimony, which he contends

is rife with inconsistencies with his trial testimony, and thus "goes to the heart of the credibility

of the victim." Pet.'r's Mot. ¶¶ 12-14, 16, 18. Lopez asserts that if he had the complete grand

jury testimony, he would be able to ascertain "what else . . . this victim (who was an illegal

immigrant) told the Grand Jury so he would not be deported," id. ¶ 19, which potentially might

reveal additional discrepancies with Martinez's trial testimony, and thus "were necessary for

cross examination purposes." Id. ¶ 12. Lopez notes a number of specific inconsistencies

between Martinez's grand jury and trial testimony, including: the characterization of Lopez's

entourage ("black guys" vs. "Dominican guys"); the legality of Martinez's line of work ("illegal"

vs. "legal"); and what time of day Martinez began selling marijuana on October 18, 2008, the

date of the incident ("9:00 a.m. vs. 11:00 a.m."). Id. ¶16.

These contentions do not demonstrate any grounds for habeas relief. Lopez's trial

counsel had the opportunity to use, and did in fact use, Martinez's grand jury testimony to

impeach him at trial. (See Tr. 246-47). Moreover, there is nothing in the record to demonstrate

that Lopez's counsel did not have all of the grand jury testimony to which he was entitled,

namely, the testimony of the witnesses who testified at trial. When evidence, such as that sought

here by Lopez, is neither new nor was unavailable at the time of trial, courts routinely deny a

habeas petitioner's motion to obtain discovery. See, e.g., Gonzalez v. Bennett, No. 00-CV-8401

(VM), 2001 WL 1537553, at *5 (S.D.N.Y. Nov. 30, 2001) (denying petitioner's discovery

motion seeking transcripts of witnesses' plea allocutions and various documents where trial

counsel could have obtained transcripts and requested documents were already introduced into

evidence at trial).  In sum, Lopez has failed to demonstrate good cause for seeking a copy of Martinez's complete grand jury testimony (or any other witness's grand jury testimony, to the extent he is seeking it as well).

For these reasons, Lopez's discovery motion should be denied.

## B. Legal Standards for Habeas Corpus Relief Under Section 2254

### 1. The Exhaustion Doctrine

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant habeas relief unless the petitioner has first exhausted his claims in state court.  See 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—(A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.); id. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").  The exhaustion requirement is grounded in principles of comity and federalism.  O'Sullivan, 526 U.S. at 844 ("Comity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief.") (citations omitted).

Exhaustion "requires that the prisoner 'fairly present' his constitutional claim to the state courts, which he accomplishes 'by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.'" Jackson v. Conway, 763 F.3d 115, 133 (2d Cir. 2014) (quoting Rosa v. McCray, 396 F.3d 210, 217 (2d Cir. 2005)). "While 'a state prisoner is not required to cite chapter and verse of the Constitution in order to satisfy this requirement,' he must tender his claim 'in terms that are likely to alert the state courts to the claim's federal nature.'" Jackson, 763 F.3d at 133 (quoting Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011)). A petitioner may sufficiently alert the state court to the nature of his constitutional claim by citing to a specific constitutional provision. Ramirez v. Attorney Gen. of New York, 280 F.3d 87, 94-95 (2d Cir. 2001). However, a petitioner may not merely "make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." Gray v. Netherland, 518 U.S. 152, 163 (1996) (holding that a general appeal to a "broad federal due process right" was insufficient to meet the exhaustion requirement without a "more particular analysis" of the specific claim based on the relevant constitutional case law); see also Smith v. Duncan, 411 F.3d 340, 349 (2d Cir. 2005) ("The greatest difficulty arises when in the state court the petitioner has described his claim in very broad terms, such as denial of a 'fair trial.'") (quoting Daye v. Attorney Gen. of State of New York, 696 F.2d 186, 192 (2d Cir. 1982)).

A petitioner may also fairly present his claim to a state court by: "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." Carvajal, 633 F.3d at 104

(quoting <u>Daye</u>, 696 F.2d at 194). In this analysis, the critical question is whether the legal doctrines asserted in the state and federal courts are substantially the same, such that the state courts would have been on notice of the constitutional nature of the claim, even if it was argued primarily on state law grounds. <u>Smith</u>, 411 F.3d at 349-50; <u>Daye</u>, 696 F.2d at 192. A federal claim is not fairly presented for purposes of habeas exhaustion when the state-law claim raised in state court is "no more than somewhat similar" to a claim for relief grounded in federal law. <u>Smith</u>, 411 F.3d at 350 (quoting <u>Duncan v. Henry</u>, 513 U.S. 364, 366 (1995) (per curiam)) (internal quotation marks omitted).

### 2. Procedural Bar to Claims Deemed Exhausted

Under the doctrine of procedural default, a federal court will not review the merits of claims that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Martinez v. Ryan</u>, 132 S. Ct. 1309, 1316 (2012) (citing <u>Coleman</u>, 501 U.S. at 747-48). When a state prisoner has failed to raise a particular claim to the state court and would be precluded from raising it now because of a state procedural rule, the claim is deemed to be procedurally defaulted. <u>Coleman</u>, 501 U.S. at 732. The claim meets the technical requirements for exhaustion because there are no state remedies any longer "available" to the prisoner. <u>Id.</u> (citing 28 U.S.C. § 2254(b)) (additional citations omitted). However, a federal court may not reach the claim's merits "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." <u>Id.</u> at 750; <u>see also</u> <u>Murray v. Carrier</u>, 477 U.S. 478, 492, 496 (1986); <u>Smith</u>, 411 F.3d at 347; <u>Ramirez</u>, 280 F.3d 87, 94 (2d Cir. 2001).

To demonstrate cause for the procedural default, the petitioner ordinarily must point to some external impediment preventing his appellate counsel from constructing or raising the claim, and "[a]ttorney error short of ineffective assistance of counsel does not constitute cause for a procedural default . . . on appeal . . ." Murray, 477 U.S. at 492.  A fundamental miscarriage of justice is "an extraordinary case where a constitutional violation has probably resulted in the conviction of one who is actually innocent. Id. at 496.  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (quoting Bousley v. United States, 523 U.S. 614, 623 (1998) (other internal quotation marks omitted); see also Sawyer v. Whitley, 505 U.S. 333, 339 (1992).

### 3.  AEDPA's Deferential Standard of Review

When a petitioner raises a claim that was "adjudicated on the merits in State court proceedings," habeas relief may be granted only where the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); see also Parker v. Matthews, 132 S. Ct. 2148, 2151 (2012).  Federal habeas corpus relief is available only for a violation of the Constitution or federal law; it "does not lie for errors of state law." Swarthout v. Cooke, 131 S. Ct. 859, 861 (2011) (internal quotation marks omitted); see also, e.g., Mannix v. Phillips, 619 F.3d 187, 199 (2d Cir. 2010) (["[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (internal quotation marks and citation omitted).

In reviewing a petitioner's claims, a federal habeas court presumes that the state court's determinations of fact were correct, placing on the petitioner the burden of "rebutting the

presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007).  In order for a state court to make an "unreasonable determination of the facts," it must be shown that "reasonable minds could not disagree that the [state] court misapprehended or misstated material aspects of the record in making its finding." Cardoza v. Rock, 731 F.3d 169, 178 (2d Cir. 2013) (citing Wiggins v. Smith, 539 U.S. 510, 528 (2003)).  A factual determination is not unreasonable simply because "'the federal habeas court would have reached a different conclusion in the first instance.'" Burt v. Titlow, 134 S. Ct. 10, 15 (2013) (quoting Wood v. Allen, 558 U.S. 290, 301 (2010)).

Habeas corpus review by a federal court is a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)) (internal quotation marks omitted).  AEDPA thus "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." Jones v. Murphy, 694 F.3d 225, 234 (2d Cir. 2012) (quoting Hardy v. Cross, 132 S. Ct. 490, 491 (2011)) (internal quotation marks omitted).

### 4.  Petitioner's Pro Se Status

Lopez bears the burden to establish, by a preponderance of evidence, that his constitutional rights have been violated. Hawkins v. Costello, 460 F.3d 238, 246 (2d Cir. 2006); see also Bonner v. Ercole, 409 F. App'x 437, 438 (2d Cir. 2010).  However, because he is proceeding pro se, Lopez's submissions are held to "less stringent standards than formal pleadings drafted by lawyers." Ahlers v. Rabinowitz, 684 F.3d 53, 60 (2d Cir. 2012) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)).  The Court will liberally construe the petition and interpret it "to raise the strongest arguments that [it] suggest[s]." See, e.g., Kirkland v.

Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). Pro se status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law." Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (internal quotations omitted).

## C. Analysis of Lopez's Habeas Claims

Respondent acknowledges that Lopez's petition is timely, having been filed less than one year after the date his conviction became final. Resp. Mem. at 9. Respondent argues, however, that Lopez may not obtain habeas relief on the two claims he advances because: (1) Lopez's weight of the evidence claim, though exhausted, is not cognizable on habeas review; and (2) Lopez has not exhausted his insufficiency of the evidence claim, having never raised it in state court; or, alternatively, (3) even if the sufficiency claim is deemed exhausted, it fails on the merits. Id. at 2. Each of these arguments will be considered in turn.

### 1. Lopez's Weight of the Evidence Claim Is Not Cognizable on Habeas Review

Lopez contends that his burglary and robbery convictions were against the weight of the evidence because certain elements of each crime were established only through Martinez's testimony, which lacked credibility and was contradicted in key respects by Hidalgo's testimony. Pet. at 5, 7-13. As a preliminary matter, Respondent concedes that Lopez has exhausted state court remedies as to his claims that his first-degree burglary and second-degree robbery convictions are against the weight of the evidence. Resp. Mem. at 10. Nevertheless, Respondent correctly argues that the Court cannot reach the merits of Lopez's weight of the evidence claim because it is grounded exclusively in state law. Id. at 12-13. Indeed, in his Traverse, Lopez does not contest this conclusion.

It is well-established that a weight of the evidence claim is exclusively a matter of state law and therefore presents no federal question reviewable by a federal habeas court. See, e.g., McKinnon v. Superintendent, Great Meadow Corr. Facility, 422 F. App'x 69, 75 (2d Cir. 2011) ("[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus."); Wilkerson v. Stallone, No. 13-CV-3817 (GHW) (GWG), 2014 WL 4629671, at *21 (S.D.N.Y. Sept. 17, 2014) (petitioner's weight of the evidence claim not cognizable on habeas review), report and recommendation adopted, 2015 WL 678581 (S. D. N. Y. Feb. 17, 2015); Howie v. Phillips, No. 03-CV-9757 (RWS), 2004 WL 2073276, at *3 (S.D.N.Y. Sept. 17, 2004) ("Unlike New York State appellate courts, the federal courts may not independently weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony.") (internal quotation marks and citation omitted).

Lopez's specific arguments attacking Martinez's credibility are likewise unreviewable. See Pet. at 9-10. Credibility determinations are the exclusive province of the jury and are beyond the scope of habeas review. See, e.g., Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996) ("[A]ssessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal."); Alexis v. Griffin, No. 11-CV-5010 (DLC) (FM), 2014 WL 3545583, at *20 (S.D.N.Y. July 18, 2014) (habeas court must defer to jury's assessments regarding weight of the evidence and credibility) (quoting Frazier v. New York, 187 F. Supp. 2d 102, 109 (S.D.N.Y. 2002)), report and recommendation adopted, 2014 WL 5324320 (S.D.N.Y. Oct. 20, 2014). Accordingly, Lopez's arguments regarding the weight of the evidence and the credibility of the prosecution's witnesses fail to articulate a basis for habeas relief.

## 2. Lopez Did Not Adequately Exhaust his Insufficiency of the Evidence Claim

Lopez's second contention is that the evidence presented at trial was legally insufficient to establish his guilt of second-degree robbery and first-degree burglary. Specifically, Lopez asserts that Martinez's unreliable and uncorroborated testimony, which Hidalgo contested, was insufficient to prove: (1) the existence of the cellphone Lopez allegedly stole; (2) that Lopez entered 83 Post Avenue with the intent to commit a crime; or, in the alternative, (3) that Lopez entered 83 Post Avenue unlawfully (by brandishing a gun and coercing Hidalgo to open the entrance door to the building). Pet. at 5-13. Respondent contends that Lopez failed to adequately exhaust this claim because he did not raise it in state court, and, therefore, the claim is procedurally defaulted. Resp. Mem. at 13. Respondent argues further that because the claim is procedurally defaulted and because Lopez has shown neither cause for nor prejudice from the failure to raise the claim, nor that he is actually innocent, it is not reviewable. Id. In his Traverse, Lopez responds to Respondent's argument by claiming that he exhausted his insufficiency of the evidence claim simply by raising a state-law weight of the evidence claim on direct appeal even if, as Lopez admits, he never challenged the evidence's legal sufficiency specifically. Traverse at 7-9. For the following reasons, I agree with Respondent.[7]

---

[7] Had Lopez presented an insufficiency of the evidence claim to the Appellate Division, it would have found the argument unpreserved. In his Traverse, Lopez asserts that he preserved this claim "nunc pro tunc" by asking the Appellate Division to reweigh the evidence because "that step is performed . . . irrespective of whether defendant preserved the sufficiency claim at trial." Traverse at 8 (citing People v. Danielson, 9 N.Y.3d 342, 348-49 (2007)). Lopez misunderstands the preservation standards under New York law. It is true that the Appellate Division may exercise its unique authority to hear a weight of the evidence claim irrespective of whether a sufficiency claim was properly preserved at trial. See Danielson, 9 N.Y.3d at 348-49. However, any potential sufficiency claim here is barred from review because Lopez has not complied with New York's procedural rules. Although Lopez's trial counsel moved for dismissal at the end of the prosecution's case "on the grounds that the People have failed to establish a prima facie case," Tr. 348-49, under New York law, a motion to dismiss that does not specify how the proof is insufficient to sustain the charge fails to preserve that issue of law for appeal. See King v.

23

### a. Lopez Did Not Fairly Present his Sufficiency Claim to the State Courts

Lopez's brief to the Appellate Division only argued that his convictions for second-degree robbery and first-degree burglary were against the weight of the evidence, not that the evidence was legally insufficient.  See Appellant's Brief at 26.  In support of his claim, Lopez exclusively cited New York State legal authority regarding the reversal of jury verdicts that are against the weight of the evidence.  In fact, Lopez essentially conceded that the evidence was legally sufficient to establish guilt, arguing that reversal was warranted "even if the evidence is legally sufficient from a technical standpoint," and "even if all elements and necessary findings are supported by some credible evidence."  Appellant's Brief at 28; see also Resp. Brief at 16 ("On appeal, defendant does not . . . dispute that the jury's verdict for all of the charges was supported by legally sufficient evidence.").[8]  Having disclaimed any challenge to the sufficiency of the evidence in his state court appeals, Lopez cannot now raise the argument for the first time in federal court.  See, e.g., Galdamez v. Keane, 394 F.3d 68, 73-74 (2d Cir. 2005) ("A petitioner may not evade exhaustion's strictures by defaulting his or her federal claims in state court.") (citing Coleman, 501 U.S. at 732).

An analysis of his specific contentions on direct appeal demonstrates that Lopez sought reversal of his robbery and burglary convictions solely on weight of the evidence grounds and

---

Artus, 259 F. App'x 346, 347 (2d Cir. 2008) (summary order) ("In New York State, a defendant may not raise, for the first time on appeal, arguments concerning the legal sufficiency of the prosecution's evidence that were not raised with specificity in the trial court.") (citing C.P.L. § 470.05(2)) (additional citations omitted); People v. Gray, 86 N.Y.2d 10, 19 (1995) ("[E]ven where a motion to dismiss for insufficient evidence was made, the preservation requirement compels that the argument be 'specifically directed' at the alleged error.") (citation omitted).

[8] Page 28 of Lopez's brief to the Appellate Division was inadvertently omitted from the State Court Record.  Respondent's counsel subsequently located the missing page and supplemented the record.  (Dkt. No. 13).

not based on the evidence's legal insufficiency. The thrust of Lopez's claim was that the jury improperly weighed the testimonial evidence and made the wrong credibility determinations about the prosecution's chief witnesses, Martinez and Hidalgo. Conceding that Martinez's testimony regarding the existence of the cell phone and Lopez's forceful entry into 83 Post Avenue would meet a legal sufficiency threshold, see Appellant's Brief at 26, 28, Lopez nevertheless argued that the Appellate Division should reweigh the evidence because Martinez's uncorroborated testimony "was neither credible nor reliable," while Hidalgo, whose testimony contradicted Martinez's, "was the more credible witness." Id. at 26, 31, 36.

In advancing these arguments, Lopez "did not invoke 'pertinent federal cases employing constitutional analysis,' nor did he seek support for his contention from 'state cases employing constitutional analysis in like fact situations.'" Carvajal, 633 F.3d at 107 (quoting Daye, 696 F.2d at 194); see also Baldwin v. Reese, 541 U.S. 27, 33 (2004); Duncan, 513 U.S. at 366. Lopez's only allusion to federal law is three string citations to the Fourteenth Amendment, see Appellant's Brief at 3, 26, 27, which is, at best, a vague appeal to a broad constitutional guarantee that fails to identify a specific constitutional error. Gray, 518 U.S. at 163 (petitioner may not merely "make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court"); Brown v. Conway, No. 08-CV-1780 (MKB), 2012 WL 2872150, at *3 (E.D.N.Y. July 11, 2012) (same).

Therefore, as Lopez correctly observes, the key inquiry is whether his weight of the evidence claim under New York law can, standing alone, serve as a proxy for presenting a constitutional sufficiency claim to the state court. See Pet. Reply at 7 ("[T]he exhaustion question [asks] whether the claim had been fairly presented to the state courts, not whether [petitioner] had attached the correct label.") (quoting Duncan, 513 U.S. at 372) (Stevens, J.,

dissenting)); Smith, 411 F.3d at 349. The short answer is that it cannot. These two claims are, in the words of Duncan, "no more than somewhat similar" rather than "virtually identical," as would be required for the former claim to fairly present the latter. 513 U.S. at 366 (holding that petitioner's claim concerning evidentiary error under state law was not sufficiently similar to federal due process claim in order for that claim to be exhausted). "In developing and refining the 'fairly presented' standard, the Supreme Court has concentrated on the degree of similarity between the claims that a petitioner presented to the state and federal courts." Smith, 411 F.3d at 349 (quoting Jackson v. Edwards, 404 F.3d 612, 619 (2d Cir. 2005)) (other internal quotation marks omitted) (petitioner failed to exhaust constitutional claim where "the state and federal issues are not so similar that the constitutional claim was fairly presented to the state court").

An argument that the jury's verdict is against the weight of the evidence is grounded in New York Criminal Procedure Law ("CPL") § 470.15(5), which permits the intermediate appellate court to reverse or modify a conviction when it determines on independent review of the facts that the verdict "was, in whole or in part, against the weight of the evidence." Unlike a claim challenging the sufficiency of the evidence, which may be based upon both state and federal due process principles, a weight of the evidence claim is a pure state-law claim that involves a different standard of review. People v. Bleakley, 69 N.Y.2d 490, 495 (1987). As the Bleakley court explained:

> Although the two standards of intermediate appellate review—legal sufficiency and weight of evidence—are related, each requires a discrete analysis. For a court to conclude . . . that a jury verdict is supported by sufficient evidence, the court must determine whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial . . . and as a matter of law satisfy the proof and burden requirements for every element of the crime charged. If that is satisfied, then the verdict will be upheld by the intermediate appellate court on that review basis.

> To determine whether a verdict is supported by the weight of the evidence,
> however, the appellate court's dispositive analysis is not limited to that legal test.
> Even if all the elements and necessary findings are supported by some credible
> evidence, the court must examine the evidence further.  If based on all the
> credible evidence a different finding would not have been unreasonable, then the
> appellate court must, like the trier of fact below, weigh the relative probative
> force of conflicting testimony and the relative strength of conflicting inferences
> that may be drawn from the testimony . . . If it appears that the trier of fact has
> failed to give the evidence the weight it should be accorded, then the appellate
> court may set aside the verdict.

Id.; see also Parker v. Ercole, 666 F.3d 830, 833 (2d Cir. 2012) ("Under New York law, a

weight of the evidence claim requires more exacting review than an insufficiency claim,

because it entails a weighing of the evidence and an assessment of the credibility of the

State's witnesses.") (citing Bleakley, 69 N.Y.2d at 495); Douglas v. Portuondo, 232 F.

Supp. 2d 106, 116 (S.D.N.Y. 2002) (sufficiency of the evidence claim cognizable under

federal due process principles whereas New York weight of the evidence claim has no

corollary in federal law).

The difference in standards is more than semantic; it can be outcome-dispositive.

See, e.g., People v. Zephyrin, 52 A.D.3d 543, 544 (2d Dep't 2008) (finding

complainant's testimony legally sufficient evidence to establish defendant's guilt but

reversing conviction as against the weight of the evidence because testimony lacked

credibility and was contradicted by testimony of police officers at scene of incident);

People v. Roman, 217 A.D.2d 431, 431 (1st Dep't 1995) ("[W]e do not reverse based on

the legal insufficiency of the evidence adduced at trial to establish his guilt of the crime

of criminal possession of stolen property . . . . Rather, we reverse because we find merit

in appellant's contention that the verdict should be set aside because it was against the

weight of the evidence (CPL 470.15 [5]).").

The Appellate Division construed Lopez's brief to raise only the claim that his robbery and burglary convictions were against the weight of the evidence under New York law and rejected his appeal on those grounds without any mention of the evidence's sufficiency.  New York state courts "ha[ve] no duty to 'look for a needle in a paper haystack'" nor construe a federal claim in a brief that explicitly disclaims reliance on one. Smith, 411 F.3d at 345 (quoting Galdamez v. Keane, 394 F.3d 68, 74 (2d Cir. 2005)). Moreover, as discussed supra, had the court deemed Lopez to raise a sufficiency claim, it would have found it to be unpreserved because Lopez's counsel did not properly specify the deficiencies in the evidence at trial as is required under C.P.L. § 470.05(2).

Accordingly, because Lopez did not fairly present his constitutional insufficiency of the evidence claim to the state courts, it is not exhausted for purposes of AEDPA.

The Court is aware that some federal courts have reached the opposite conclusion: that presenting a weight of the evidence claim without more also raises an insufficiency of the evidence claim for purposes of habeas exhaustion.  Lopez cited to some of these decisions in his Traverse.  See Traverse at 8-9, citing Liberta v. Kelly, 839 F.2d 77, 80 n.1 (2d Cir. 1988) (finding respondent's exhaustion argument "frivolous" on similar facts because "New York courts, when reviewing the evidence in support of a criminal conviction, have consistently adhered to a standard that is virtually identical to the standard set forth in Jackson v. Virginia") and Wilson v. Heath, 938 F. Supp. 2d 278, 290 (N.D.N.Y. 2013) (addressing merits of sufficiency claim in abundance of caution because "the Second Circuit [in Liberta] has suggested that a petitioner who raises a state law weight of the evidence claim on direct appeal has exhausted a constitutional sufficiency of the evidence claim for federal habeas purposes"); see also, e.g., Williams v. Lavalley,

28

No. 9:12-CV-01141-JKS, 2014 WL 1572890, at *1 (N.D.N.Y. Apr. 17, 2014) (same);

Martin v. Brown, No. 08-CV-0316 (JFB), 2010 WL 1740432, at *7-8 (E.D.N.Y. Apr. 29,

2010) (same); Davis v. Senkowski, No. 97-CV-2328 (JG), 1998 WL 812653, at *6 n.3

(E.D.N.Y. Aug. 6, 1998) ("Federal courts appear to use these terms ['weight of the

evidence' and 'sufficiency of the evidence'] interchangeably. New York courts, when

reviewing the weight or sufficiency of the evidence in support of a criminal conviction,

adhere to a standard that is virtually identical to the one given in Jackson, 443 U.S. at

319.").

However, notwithstanding the footnote in Liberta, more recent cases that have

analyzed the nature of "weight" and "sufficiency" claims in greater detail have come to

the same conclusion as this Court: a weight claim cannot stand in for a constitutional

sufficiency claim when considering whether a habeas petitioner has exhausted state court

remedies because the two claims are no more than somewhat similar. See, e.g., Martin v.

Brown, No. 08-CV-0316 (JFB), 2010 WL 1740432, at *7-8 n.4 (E.D.N.Y. Apr. 29,

2010); Thomas v. Fischer, No. 05-CV-3010 (DLC), 2007 WL 1988273, at *2-4

(S.D.N.Y. July 6, 2007); Peralta v. Bintz, No. 00-CV-8935 (HB) (GWG), 2001 WL

800071, at *5 (S.D.N.Y. July 16, 2001), report and recommendation adopted, 2001 U.S.

Dist. LEXIS 25963 (S.D.N.Y. Nov. 30, 2001).

Furthermore, the Second Circuit has not reaffirmed the identity of weight and

sufficiency claims since its Liberta footnote. But to the extent the law remains unclear on

this point and in an abundance of caution, this Court will address the merits of Lopez's

sufficiency claim below.[9]

### 3. The State Court's Finding That There Was Sufficient Evidence to Establish Lopez's Guilt of Second-Degree Robbery and First-Degree Burglary Was Not Objectively Unreasonable

Assuming the Court construes Lopez's sufficiency claim as exhausted and not

procedurally barred, it nonetheless provides no avenue for habeas relief. As an initial matter, to

the extent the Appellate Division decided that Lopez's robbery and burglary convictions were

not against the weight of the evidence, it necessarily decided that there was sufficient evidence to

support the verdict. See Parker, 666 F.3d at 833; Bleakley, 69 N.Y.2d at 495 (Appellate Division

must first find that "all the elements and necessary findings are supported by some credible

evidence" before reexamining the credibility of witnesses and relative weight of conflicting

testimony and inferences that may be drawn from it); People v. Romero, 7 N.Y.3d 633, 643

(2006) (same).

The Due Process Clause of the Fourteenth Amendment requires that a criminal

conviction be based on "proof beyond a reasonable doubt of every fact necessary to constitute

the crime [with] which [the defendant] is charged." Einaugler v. Supreme Court of the State of

New York, 109 F.3d 836, 839 (2d Cir. 1997) (quoting In re Winship, 397 U.S. 358, 364 (1970)).

---

[9] Because the Court concludes that Lopez's sufficiency claim was not fairly presented to the state courts, it is deemed exhausted but procedurally defaulted. New York procedural rules prevent Lopez from bringing a sufficiency claim that he could have presented on direct appeal but did not. See N.Y. Ct. Rules § 500.10(a); N.Y. Crim. Proc. Law §§ 440.10(2)(c), 460.15; Ramirez, 280 F.3d at 89; Bryan v. Lee, No. 09-CV-9276 (ER), 2013 WL 5586312, at *7 (S.D.N.Y. Oct. 9, 2013). As Lopez has made no attempt to show cause for, or prejudice from, the failure to present this claim to the New York State courts, or that failure to consider the claim will result in a fundamental miscarriage of justice, his claim should be dismissed without reaching its merits for this reason as well. See, e.g., Coleman, 503 U.S. at 750.

A habeas petitioner challenging the sufficiency of the evidence to support a state-court conviction "bears a very heavy burden," Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002) (citation omitted), because the AEDPA establishes a "twice-deferential" standard of review. Santone v. Fischer, 689 F.3d 138, 148 (2d Cir. 2012) (quoting Parker v. Matthews, 132 S. Ct. 2148, 2152 (2012) (per curiam)). First, a state court must uphold a jury's guilty verdict so long as "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 318-19 (emphasis in original); see also, e.g., Santone, 689 F.3d at 148; United States v. Rosa, 11 F.3d 315, 337 (2d Cir. 1993) (citing cases). Thereafter, a federal court in a habeas proceeding may not overturn the "state-court decision rejecting a sufficiency challenge . . . unless the 'decision was objectively unreasonable.'" Matthews, 132 S. Ct. at 2152 (quoting Cavazos v. Smith, 132 S. Ct. 2, 4 (2011) (per curiam)) (other internal quotation marks omitted).

The evidence in the record must be reviewed as a whole, and "guilt beyond a reasonable doubt may be established entirely by circumstantial evidence." Maldonado, 86 F.3d at 35. It is well-established that credibility determinations are to be made by the jury and are not reviewable by a federal habeas court. See, e.g., Matthews, 132 S. Ct. at 2152; Maldonado, 86 F.3d at 35; Coble, 2013 WL 5323733, at *13. Thus, where there are conflicts in testimony, the court defers "to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence." United States v. Best, 219 F.3d 192, 200 (2d Cir. 2000) (quoting United States v. Morrison, 153 F.3d 34, 49 (2d Cir. 1998)) (internal quotation marks omitted); see also, e.g., Schlup v. Delo, 513 U.S. 298, 330 (1995) ("The Jackson standard . . . looks to whether there is sufficient evidence which, *if credited*, could support the conviction.") (emphasis added); Santone, 689 F.3d at 148

31

("Jackson leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors draw reasonable inferences from basic facts to ultimate facts[.]") (quoting Coleman v. Johnson, 132 S. Ct. 2060, 2064 (2012) (per curiam)).

Under Jackson, "federal courts must look to state law for the substantive elements of the criminal offense." Johnson, 132 S. Ct. at 2064 (quoting Jackson, 443 U.S. at 324, n.16). To establish Lopez's guilt of robbery in the second degree, the prosecution had to prove that Lopez, with the aid of another person actually present, forcibly stole Martinez's cell phone. N.Y. Penal Law § 160.10(1). Lopez contends that the prosecution failed to prove that Martinez owned a cell phone because it offered no physical evidence of ownership, such as a store receipt or phone company record, Pet. at 8, 10, and the only evidence it did offer—Martinez's testimony—lacked credibility, given Martinez's background as an illegal immigrant and drug dealer, and his motive to provide favorable testimony to the prosecution. Pet. at 9-10. Moreover, Lopez argues that Martinez's testimony was contradicted by Hidalgo, who testified at one point that Martinez did not own a cell phone and that "a cell phone was never involved" in the incident. Id.

Despite Lopez's arguments, the Appellate Division's finding that Lopez "stole Martinez's cell phone . . . by force rather than as an afterthought following an assault," 106 A.D.3d at 534, has ample support in the record. Martinez testified that he had purchased the cell phone from Radio Shack for $43, and that during the assault outside his building, Lopez took the cell phone from his pocket. (Tr. 50-51). Although Lopez objects that there was no direct evidence of Martinez's ownership of the cell phone, Pet. at 8, a conviction may be based on testimonial or circumstantial evidence alone. See, e.g., Dixon v. Miller, 293 F.3d 74, 81 (2d Cir. 2002); Maldonado, 86 F.3d at 35; Bossett v. Walker, 41 F.3d 825, 830 (2d Cir. 1994). Lopez argues that Martinez's testimony cannot not be trusted because he "had plenty of reason[s] to

frame" Lopez, and "other evidence . . . existed to support that Martinez did not possess a cell phone," namely, Hidalgo's testimony. Pet. at 8-10; (Tr. 276). Hidalgo, in any event, later admitted that he did not know with certainty whether Martinez owned a phone. (Tr. 279). Additionally, the prosecution presented evidence of a phone call recorded by the NYC DOC in which Lopez coached Hidalgo to assert that Martinez never had a phone so that Lopez could avoid a robbery conviction. See People's Ex. 1; Resp. Brief at 13.

Considering the evidence as a whole and crediting all inferences in the prosecution's favor, Jackson, 443 U.S. at 318-19; Maldonado, 86 F.3d at 35, a rational jury could have believed Martinez's testimony instead of Hidalgo's contrary claim that Martinez did not own a cell phone. The Court must defer to the jury's resolution of conflicting testimony and its determinations as to whose testimony was more credible. United States v. Miller, 626 F.3d 682, 691 (2d Cir. 2010); Best, 219 F.3d at 200. Lopez does not contest the prosecution's proof of any other element of the crime. Therefore, Lopez has not demonstrated that the state court's finding that there was sufficient evidence to establish his guilt of second-degree robbery was objectively unreasonable. Matthews, 132 S. Ct. at 2152; Santone, 689 F.3d at 14.

Next, with respect to Lopez's convictions of two counts of burglary in the first degree, the prosecution had to establish that Lopez knowingly entered or unlawfully remained in 83 Post Avenue (the "dwelling") with the intent to commit a crime therein, and that, when effecting entry or while in the dwelling, he caused physical injury to Martinez, who was not a participant in the crime. N.Y. Penal Law § 140.30.

Lopez's claim that the prosecution failed to prove that he entered 83 Post Avenue with the "intent to commit a crime," Pet. at 12-13, is contradicted by substantial evidence. Lopez is not challenging his assault-related convictions here nor did he do so in his direct appeal;

therefore, Lopez admits that he physically assaulted Martinez both on the street in front of 83 Post Avenue and inside the building. At trial, Martinez testified that he entered the building to escape the severe beating that Lopez was inflicting on him at the time. (Tr. 51, 54-55, 143-45). Martinez testified that, from inside the building, he heard Lopez threaten to kill him and his girlfriend once he got the gun and to "take all the money that was upstairs in the apartment." (Tr. 54-55, 57, 163). Lopez then ordered Hidalgo to let him into the building and violently beat and pistol-whipped Martinez until Hidalgo intervened. (Tr. 66-67, 164-66).

Martinez's testimony alone is sufficient to support Lopez's convictions. United States v. Danzey, 594 F.2d 905, 916 (2d Cir. 1979) ("[T]he testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction."); Quintana v. Lee, No. 12-CV-3204 (PGG) (FM), 2014 WL 6749207, at *6 (S.D.N.Y. Nov. 18, 2014), report and recommendation (same); Coble, 2013 WL 5323733, at *12 (same). "Intent can be inferred from the circumstances of the forcible entry and from testimony that, immediately after entering, [Lopez] assaulted [Martinez]." Serrata v. Fischer, No. 13-CV-2632 (LGS), 2013 WL 5708599, at *10 (S.D.N.Y. Oct. 21, 2013) (citing People v. Sterina, 108 A.D.3d 1088, 1090 (4th Dep't 2013)). Based on Martinez's testimony, the jury could and did rationally infer that Lopez intended to commit assault once inside the building, and it was not objectively unreasonable for the Appellate Division to refrain from disturbing the jury's factual findings.

In the alternative, Lopez argues that the prosecution failed to establish that he entered the building "unlawfully." Pet. at 12. "A person 'enters or remains unlawfully' in or upon premises when he is not licensed or privileged to do so." N.Y. Penal Law § 140.00. Lopez argues that he "merely told Hidalgo to open the door" and that Hidalgo denied on several occasions that Lopez ever threatened him with a gun. Pet. at 12-13. Martinez, on the other hand, testified that Lopez

pointed a gun to Hidalgo's head and threatened to shoot him if he did not open the door. (Tr. 59-60, 160-64). Even Hidalgo testified that he opened the door because he was afraid that Lopez would hit him. (Tr. 271-72, 290-91). Furthermore, although Hidalgo denied seeing Lopez with a gun that day, he admitted that during the phone conversation recorded by NYC DOC, Lopez instructed Hidalgo to say that the gun, referred to as a "toy," belonged to Collado and that Lopez never hit Martinez with it. (Tr. 266, 279, 282-83).

Thus, not only did the prosecution offer Martinez's testimony, which would be sufficient in and of itself, but also additional corroborating evidence to prove that Lopez did not have permission to enter 83 Post Avenue but did so through coercion and force. This evidence is more than sufficient to prove the "unlawful entry" element of first-degree burglary. See, e.g., Faison v. McKinney, No. 07-CV-8561 (JGK), 2009 WL 4729931, at *5 (S.D.N.Y. Dec. 10, 2009) (eyewitness testimony that petitioner forcefully entered apartment to assault occupant sufficient to support first-degree burglary conviction notwithstanding petitioner's claim that he was invited into the apartment); Serrata, 2013 WL 5708599, at *7-8 (same). And to the extent Lopez is relying on conflicts between Martinez's and Hidalgo's testimony, the Court again notes that it must defer to the jury's resolution of conflicting evidence and its credibility determinations. The record thus contains sufficient evidence to support the jury's verdict of guilt as to the first-degree robbery counts and the state court's decision upholding the verdict was not objectively unreasonable.

Accordingly, Lopez's insufficiency of the evidence claim as to both his second-degree robbery and first-degree burglary convictions should be denied on the merits as well.

### III.    CONCLUSION

For the foregoing reasons, I recommend that Lopez's motion for discovery and his petition for a writ of habeas corpus be denied.

### PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Richard J. Sullivan, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Sullivan. **FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: New York, New York
March 23, 2015

JAMES L. COTT
United States Magistrate Judge

**A copy of this Report and Recommendation has been mailed to the following:**

Joey Lopez
10A3558
Five Points Correctional Facility
State Route 96, P.O. Box 119
Romulus, NY 14541